E-FILED
Friday, 11 April, 2008  01:54:33 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| PRAIRIE EYE CENTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  07-3284 |
| | ) | |
| CHRISTOPHER PHILLIPS, MD., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendant's Motion to Transfer or Stay (d/e 3) (Motion to Stay).  Plaintiff Prairie Eye Center has filed a Memorandum of Law in Opposition to Defendant's Motion to Transfer or Stay (d/e 5) (Memorandum in Opposition).  For the reasons stated below, the Motion to Stay is denied.

## FACTS

Prairie Eye Center alleges that Defendant Christopher Phillips breached an employment contract when he refused to begin work at the Prairie Eye Center on November 1, 2006.  According to the Complaint (d/e 1), Prairie Eye Center is an Illinois corporation and Dr. Phillips is a doctor

1

of ophthalmology who currently lives in Washington State but lived in Massachusetts at the time of the events in question. The Complaint also alleges the following facts. In July of 2006, after reviewing Dr. Phillips' resume on the Academy of Ophthalmology web site, Prairie Eye Center's owner, Dr. Sandra Yeh, invited Dr. Phillips to visit the Prairie Eye Center in Springfield, Illinois. Dr. Phillips lived in Massachusetts and had a medical license to practice in that state, but he indicated that he would consider moving to Springfield.

On July 12, 2006, Dr. Phillips traveled to Springfield to meet with Dr. Yeh and other Prairie Eye Center employees. Over the two days he was in Springfield, Dr. Phillips had extensive discussions with the Prairie Eye Center doctors regarding the position available and his anticipated responsibilities and compensation. The talks apparently were productive, because after Dr. Phillips returned to Massachusetts, Prairie Eye Center sent him a written employment contract to consider. The parties exchanged emails regarding the contract and Dr. Phillips' responsibilities, and on August 20, 2006, they executed the contract.

Under the contract, Dr. Phillips agreed to start work at the Prairie Eye Center on November 1, 2006. In the intervening time, Dr. Phillips applied

for his Illinois medical license, and Prairie Eye Center sent out mailings and advertisements announcing that he soon would be joining the practice. Over the Labor Day weekend, Dr. Phillips brought his fiancee to Springfield, and they met with Dr. Yeh and other Prairie Eye Center employees.

On September 27, 2006, Dr. Phillips wrote to Prairie Eye Center stating that pursuant to their contract, he was terminating the employment agreement.  Section 9 of the contract provides: "Either party may terminate this agreement after six (6) months of employment by the service on the other party of a written notice of election to terminate, which shall be effective ninety (90) days thereafter." Complaint (d/e 1), ¶ 15.  Prairie Eye Center insisted he complete nine months of employment, but Dr. Phillips refused to commence work.

On October 25, 2007, Prairie Eye Center filed this suit alleging breach of contract.  More than a year before, on October 20, 2006, Dr. Phillips filed a three-count complaint against Prairie Eye Center in the Suffolk County Superior Court of Massachusetts.  He requested a declaratory judgment and alleged breach of fiduciary duty and breach of implied covenant of good faith and fair dealing.  See Motion to Stay, Exhibit A, Dist. Mass. Case No. 06-12070 Notice of Removal, Exhibit 1, Complaint.

Prairie Eye Center later removed the Massachusetts suit to the United States District Court for the District of Massachusetts.  See Motion to Stay, Exhibit A, Dist. Mass. Case No. 06-12070 Notice of Removal.

Dr. Phillips' Massachusetts case involves the same contract.  In the Massachusetts suit, Dr. Phillips alleged that because he had not yet received his Illinois medical license, he could not perform under the contract with Prairie Eye Center.  Id., Exhibit A, Dist. Mass. Case No. 06-12070 Notice of Removal, Exhibit 1, Complaint, ¶ 20.  He also alleged that the four-year covenant not to compete included in the contract is against public policy. Id., Exhibit A, Dist. Mass. Case No. 06-12070 Notice of Removal, Exhibit 1, Complaint, ¶ 22.

On August 27, 2007, after finding that it lacked personal jurisdiction over Prairie Eye Center, the Massachusetts district court dismissed Dr. Phillips' complaint.  Motion to Stay, Exhibit B, Notice of Appeal.  From the Massachusetts district court docket, it appears that discovery never began in that case.  Memorandum in Opposition, Exhibit B, Dist. Mass. Case No. 06-12070 Docket.  Moreover, at a prior hearing on the matter, the Massachusetts district court had hinted that if it were to conclude that dismissal were unnecessary, it likely would transfer the case to this Court.

Memorandum in Opposition, Exhibit D, Dist. Mass. Case No. 06-12070 March 1, 2007 Hearing Transcript, at 5, 7. Dr. Phillips filed a notice of appeal of the dismissal September 18, 2007. Motion to Stay, Exhibit B, Dist. Mass. Case No. 06-12070 Notice of Appeal. On January 15, 2008, Dr. Phillips filed the instant Motion to Stay, requesting that this Court either transfer the case at bar to the District of Massachusetts or stay this action pending decision by the First Circuit Court of Appeals on the dismissal of the Massachusetts case. As of the briefing on this Motion, the First Circuit had not ruled.

ANALYSIS

Dr. Phillips presents two issues here: whether a transfer of venue to the District of Massachusetts is appropriate and whether a stay should be imposed. The Court holds for Prairie Eye Center on both issues.

I. TRANSFER

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). District courts have wide discretion in determining whether to transfer a case. Tice v. American Airlines, 162 F.3d 966, 974 (7th Cir. 1998).

To obtain a transfer, the moving party must convince the Court that the transfer forum is *clearly* more convenient.  Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1293 (7th Cir. 1989).  Transfer is appropriate if: (1) venue is proper in the transferor court; (2) venue and jurisdiction are proper in the transferee court; and (3) transfer will serve the interests of justice and the convenience of the parties and the witnesses.  See Chicago R.I. & P.R. Co. v. Igoe, 212 F.2d 378, 379 n.1 (7th Cir. 1954).  Without even reaching the third prong, however, the Court concludes that a transfer of venue would not be appropriate.  On the first prong, venue is proper here because Prairie Eye Center and many of its witnesses are located within the district.  On the second prong, the Massachusetts district court has held that jurisdiction is not proper in its district, and while the First Circuit may reverse the district court's decision, Dr. Phillips has not shown that a reversal is likely.  Indeed, he has not addressed the likelihood of success.  Thus, at this stage, the Court cannot conclude that the Massachusetts district court is clearly more convenient.

II.    STAY

Dr. Phillip's argument for a stay is similarly unavailing.  Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred

on them by Congress; only in exceptional cases should a federal court stay a suit to await the outcome of parallel proceedings as a matter of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). Courts employ a two-part analysis in determining whether a stay is appropriate. First, the Court must consider whether the two proceedings, even two federal proceedings, are truly "parallel." Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1287 (7th Cir. 1988). Second, if the proceedings are parallel, the Court must balance the considerations weighing in favor of, and against, a stay. Finova Capital Corp. v. Ryan Helicopters U.S.A, Inc., 180 F.3d 896, 898 (7th Cir. 1999).

"Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora." Schneider Nat. Carriers, Inc. v. Carr, 903 F.2d 1154, 1156 (7th Cir. 1990). Here, the parties are identical, and they are litigating substantially the same issues in both cases. Cases need not be identical to be parallel, but they must involve the same central issue or issues. Interstate Material Corp., 847 F.2d at 1288; Finova Capital Corp., 180 F.3d at 898. The central issue in both

cases here is whether Dr. Phillips properly failed to begin work at the Prairie Eye Center on November 1, 2006.  Thus, these cases are parallel.

Yet, a balancing of interests does not favor staying this action.  "No hard and fast rule on when parallel litigation should be stayed" exists. Professional Svs. Network, Inc. v. Am. Alliance Holding Co., 238 F.3d 897, 902 (7th Cir. 2001).  In evaluating the merit of a stay, however, courts previously have considered many issues, including: (1) whether either court is more qualified to interpret the law at issue; (2) the relative inconvenience of the court considering the stay; (3) the need to avoid piecemeal litigation; (4) the order in which the respective proceedings were filed; (5) whether the other court would adequately protect the plaintiff's rights; and (6) the relative progress of the two proceedings.  Finova Capital Corp., 180 F.3d at 898-99.

While these factors do not unanimously favor the exercise of jurisdiction here, on balance the Court finds they support denial of Dr. Phillip's Motion.  First, neither party has indicated which state law it believes should govern the common law allegations in these two suits, and without more information, the Court cannot decide the issue.  Thus, it affords little weight to this factor.  Second, this Court is not inconvenient.

Prairie Eye Center and its employees are located here, and while Dr. Phillips is not, his home in Washington is closer to this Court than to the Massachusetts district court.  Third, considering that the Massachusetts district court dismissed Dr. Phillips' suit after indicating that it saw its options as dismissal or transfer to this Court, the Court does not expect piecemeal litigation to be an issue if the dismissal is overruled.  Fourth, Dr. Phillips' suit was filed more than a year before this one, which weighs in favor of a stay.  Fifth, there is no reason to believe that the Massachusetts district court would not adequately protect Prairie Eye Center's interests.  Sixth, Dr. Phillips' Massachusetts district court case apparently has not even reached discovery, which counteracts any weight afforded to the fact that it predates the instant case.

THEREFORE, Defendant's Motion to Transfer or Stay (d/e 3) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER:   April 11, 2008

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE